**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OVERWELL HARVEST LIMITED, )<br>a British Virgin Islands company, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVID WIDERHORN and )<br>PAUL GIEDRAITIS, )<br>)<br>Defendants. ) | Civil Action No.<br><br>The Honorable |

**VERIFIED COMPLAINT
FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiff Overwell Harvest Limited ("Overwell"), by and through its undersigned counsel, pursuant to and in accordance with the Federal Rules of Civil Procedures, for its action against Defendants David Widerhorn ("Widerhorn") and Paul Giedraitis ("Giedraitis"), states the following:

**NATURE OF THE CONTROVERSY**

1. This action—and the attendant emergency—arise out of the decision of David Widerhorn, the President, Chief Executive Officer, and member of Neurensic, Inc.'s ("Neurensic" or the "Company") Board of Directors (the "Board"), to usurp unto himself complete decision-making authority for the sale of the Company. In particular, with complete disregard for the Company's Bylaws, his fiduciary duties to the Company and its stockholders, and Delaware law, Widerhorn sent an email at 3:51 AM, Friday, August 18, 2017 to the Company's stockholders, advising them that if an investor group did not emerge from among the Company's stockholders and transmit a letter of intent

to acquire the Company for at least $1.5 million by the close of business on Monday, August 21, 2017 (i.e., one business day later) the Company would be sold to Trading Technologies, as part of a self-interested transaction—the material terms of which have not been disclosed—in which insiders would reap benefits not equally shared by other stockholders. In particular, Widerhorn and Giedraitis, the Chief Operating Officer and another member of the Board, stand to receive management consulting fees from, and employment agreements with, Trading Technologies.

2. Given Widerhorn's failure to keep the only disinterested member of the Board, Kenneth Chu ("Chu"), apprised of all the material terms of the transaction and the self-interested consulting and employment agreements, neither Chu nor the other non-insider stockholders are in a position to pass on the fairness of the proposed transaction. Widerhorn's threat to sell the Company as early as Tuesday, August 22, 2017, leaves Overwell with no option but to seek an order enjoining Widerhorn and Giedraitis from engaging in a sale of the Company's assets until: (1) all material information is provided and proper notice is given to Chu in compliance with the Company's organizational documents and Delaware law; (2) all material information is provided and proper notice is given the to the stockholders in compliance with the Company's organizational documents and Delaware law; and (3) the sale of the Company's assets is properly approved in accordance with applicable Delaware law.

3. Overwell accordingly brings this action to preserve the *status quo ante* until: (1) all material facts as to the Trading Technologies transaction are fully and completely disclosed to Chu and the stockholders; (2) all material facts as to Widerhorn and Giedraitis's relationship to or interest in the Trading Technologies transaction are

fully and completely disclosed to Chu and the stockholders; and (3) adequate and proper notice is given to the Board and the stockholders under the Company's Bylaws and applicable Delaware law.

4. If Widerhorn is permitted to make good on his threat and sells the Company—along with its proprietary source code, intellectual property, and distribution rights—Overwell and the other stockholders of the Company will suffer irreparable harm. In effect, Widerhorn will have been permitted to solicit and acquire millions of dollars in various equity investments based on false pretenses; completely mismanage the Company, destroy stockholder value; and, thereafter, parachute out of the Company and into a lucrative new consulting and management role with Trading Technologies—all at the expense and to the detriment of the stockholders.

5. For these reasons, outlined in greater detail below, Overwell respectfully seeks an order: (1) declaring that Widerhorn and Giedraitis are obligated to provide the entire Board and the stockholders with all the material terms of the Trading Technology transaction, including information with respect to the consulting and employment agreements; (2) declaring that adequate and proper notice of the sale of the Company has not been provided to the entire Board or the stockholders; (3) restraining Widerhorn and Giedraitis from authorizing, in their capacity as directors, the consummation of the sale of the Company's assets to Trading Technologies for at least the next 14 days; (4) granting Overwell an award of its attorneys' fees and costs incurred in bringing this action; and (5) for any other relief the Court deems just and equitable under the circumstances.

## PARTIES

6. Plaintiff Overwell Harvest Limited, is a British Virgin Islands company, whose registered agent is located at Road Town, Tortola, British Virgin Islands. Plaintiff is a holding company for three other entities, all of which were formed outside the United States, with principal places of business outside the United States, and whose shareholders and/or members are non-US citizens.

7. Defendant David Widerhorn is a citizen of the State of Illinois and resides in Illinois. Widerhorn is the President, Chief Executive Officer, and a member of the Board of Overwell.

8. Defendant Paul Giedraitis is a citizen of the State of Illinois and resides in Illinois. Giedraitis is the Chief Operating Officer of the Company and a member of the Board of Overwell.

## JURISDICTION AND VENUE

9. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to claims occurred in this district.

## FACTS COMMON TO ALL COUNTS

### *Overwell's Investment in Neurensic*

11. Neurensic is an emerging technology company in the fintech sector that develops computer programs and software to detect abnormal trading activities that pose regulatory risk to firms in the financial industry.

12. The Company has been majority owned and controlled by its President and Chief Executive Officer, David Widerhorn, since it was formed in June 2015. Since that time Overwell has participated in at least two rounds of financings with Neurensic.

13. The first financing by Overwell occurred on or around December 11, 2015. At that time, Overwell invested $2.5 million in Neurensic, was told that the valuation of the Company was $60 million, and that its investment was the tail end of a $6-7 million raise in which Neurensic had secured other sizable and committed investors—a material representation critical to inducing Overwell to invest, that Widerhorn knew to be false.

14. Overwell's second cash infusion into the Company was made in July 2016 and subsequently memorialized in writing in February 2017. At that time Widerhorn solicited—and accepted—an additional $1 million from Overwell in exchange for preferred shares in Neurensic and a pledge of a portion of Widerhorn's interest, a Board seat, and veto rights, among other things.

15. Following Overwell's second equity investment in Neurensic, the stockholders were advised that there would be a larger investment round and that multimillion dollars of business was imminent, which would necessitate additional staff and office space—another material representation critical to inducing Overwell to invest that Widerhorn knew to be false.

### *Widerhorn's Early Morning Threat to Sell the Company's Assets Without a Disclosure of All Material Terms and Proper Notice*

16. Six months after Overwell's second investment was memorialized, on August 16, 2017, Widerhorn, informed Chu (the only disinterested, non-insider director) and the disinterested stockholders that the Company has been without a comptroller for six months and has not "been able to catch up on the books [and records] until recently." *See Ex. A*.

17. Widerhorn advised that the Company had identified "a number of issues with [its] accounting practices from the prior management of books [and records]," which required a "reconciliation" of thousands of financial transactions going back to the Company's initial formation. Widerhorn further advised Chu and the stockholders that the Company is now insolvent and its assets must be sold imminently.

18. Widerhorn made reference to entities that were purportedly interested in acquiring the Company but noted that those potential buyers "have withdrawn their interest and are unwilling to move forward given the state of the company's financial affairs." *Id.*

19. Widerhorn informed the stockholders that Trading Technologies is the only buyer that remains interested in acquiring the Company, and that Trading Technologies would likely make an offer in the range of $200,000 to $400,000. *Id.*

20. Notably, a term sheet was not disclosed or provided to Chu or the disinterested stockholders, nor was Chu or the disinterested stockholders given all material information necessary for them to independently evaluate the fairness of the proposed transaction with Trading Technologies.

21. Widerhorn concluded by inviting the stockholders to "reach out with ideas, feedback, and support" in order to "decide the final fate of the [Company] by the end of this calendar month [i.e., August 2017]." *Id.*

6

22.     Two days later, on August 18, 2017, Widerhorn followed up with an email at 3:51 AM CDT, and advised the stockholders that "[g]iven the financial situation, multiple creditor lawsuits, and government debt/tax collection efforts, we must accept an offer to sell the company in the coming days." In other words, after months of failing to apprise Chu and the other disinterested stockholders of the Company's dire financial situation, Widerhorn attempted to cram down a transaction by giving them less than four days and incomplete information to weigh and evaluate the same. *See Ex. B.*

23.     Widerhorn advised that if an investor group did not emerge from among the Company's disinterested stockholders and transmit a letter of intent to acquire the Company for "$1.5 million or greater" by the close of business on Monday, August 21, 2017, the Company's assets would be sold to Trading Technologies. *Id.*

24.     Specifically, Widerhorn said that unless the disinterested stockholders were "willing to purchase the company for a fair price that satisfies emergency liens ($1.5 million or greater), we will have a fiduciary obligation to move forward with this offer [the Trading Technology offer] and transfer full ownership of the business." Widerhorn's demand that an investor group pay "$1.5 million or greater" for the Company while simultaneously advocating the sale of the Company's assets to Trading Technologies for $200,000 to $400,000 further evidences his failure to properly explore potential alternatives to maximize sale proceeds, or worse, manipulate and mislead shareholders with respect to the Trading Technologies transaction. *Id.*

25.     Widerhorn concluded by warning the stockholders: "We will need a letter of intent [from an investor group of stockholders] by the close of business Monday [August 21] to stop the [Trading Technologies] process if this is of interest." If not, Widerhorn concluded,

7

"the company will likely be forced to accept an offer from Trading Technologies "in the range of $200,000-400,000 next week." *Id.*

26. Completely absent from Widerhorn's August 18, 2017 email is an explanation for what had transpired between his 6:30 p.m. email on Tuesday and his 3:51 a.m. email on Friday that would justify accelerating the sale of the Company to Trading Technology.

27. If Widerhorn makes good on this threat and sells the Company's assets to Trading Technologies for a price in the range of $200,000 to $400,000, not only will the Company's stockholders be deprived of proper notice and process to which they are entitled under the Company's Bylaws and applicable Delaware law, but they will also be impermissibly stripped of their right to evaluate the material terms of the proposed transaction on a fully informed basis.

### *Widerhorn's Notice Fails to Comply With the Company's Bylaws and Delaware Law*

28. The Bylaws of the Company (the "Bylaws") expressly provide that "[w]ritten notice, stating the place . . . date and time of the meeting . . . shall be given to each stockholder entitled to vote at his address as it appears on the records of the corporation, not less than ten, or in the case of a merger or consolidation, not less than twenty, nor more than sixty days before the date of the meeting." *See. Ex. C, Bylaws § 1.7.*

29. Widerhorn's August 18, 2017 email, to the extent it can be considered "notice," deals with the sale of the company and its assets but does not provide ten days' notice of the transaction and thus does not comply with the requirements of Section 1.7 of the Bylaws. *Id.*

30. Furthermore, Section 271 of the Delaware General Corporation Law ("DGCL") sets forth the minimum notice requirements a corporation transmit to stockholders in order to sell all or substantially all of its property and assets:

> Every corporation may at any meeting of its board of directors or governing body sell, lease or exchange all or substantially all of its property and assets . . . upon such terms and conditions . . . as its board of directors or governing body deems expedient and for the best interests of the corporation, when authorized by a resolution adopted by the holders of a majority of the outstanding stock of the corporation entitled to vote thereon . . . at a meeting duly called upon at least 20 days' notice."

8 Del. C. § 271(a).

31. Widerhorn's August 18, 2017 email, to the extent it can be characterized as "notice," deals with the sale of the company, including all or substantially all of its assets, but does not provide "at least 20 days' notice" and thus does not comply with Section 271(a).

### *Widerhorn and Giedraitis Will Reap Benefits from the Contemplated Transaction Not Ratably Shared by Other Stockholders*

32. Widerhorn and Giedraitis will receive benefits from the sale of the Company's assets to Trading Technologies not shared ratably by the other stockholders in the Company. Thus, Widerhorn and Giedraitis are "interested directors" under Delaware law.

33. In particular, Widerhorn has disclosed that if the Company is sold to Trading Technologies, Trading Technologies has agreed to "employ our employees," extend a "90-day part-time consulting contract with the company leadership," and execute "contracts with two to four (TBD) of the employees flagged for us previously as key employees." *Ex. A*.

34. Upon information and belief, Widerhorn and Giedraitis would benefit from the consulting contract and are among the employees that Trading Technologies has identified as "key employees" to whom employment contracts will be extended.

35. The material facts as to the term sheet, contract, or transaction pursuant to which Trading Technologies would acquire the Company have not been disclosed or made known to Chu, the only disinterested member on the Board, or to the stockholders.

36. The material facts as to the consulting and employment contracts that Trading Technologies has extended or intends to extend to the Company's employees—believed to be Widerhorn and Giedraitis—have not been disclosed or made known to Chu, the only disinterested member of the Board, or to the stockholders.

37. The Stockholders Agreement provides, "Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a beach or threatened breach of any such obligations, each of the other parties hereto shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction." *See Ex. D, Stockholders Agreement § 7.14.*

38. The Stockholders Agreement further provides that any such equitable relief may issue "without any requirement to post bond." *Id. § 7.14.*

39. The Stockholders Agreement also provides that "[i]n the event that any party hereto institutes legal suit, action or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party in the

10

suit, action or proceeding, shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by such party in conducting the suit, action or proceeding, including reasonable attorneys' fees and expenses and court costs." *Id. § 7.15.*

## CLAIM NO. 1
## DECLARATORY JUDGMENT

40. Plaintiff repeats and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 39 as set forth above.

41. An actual, substantial and justiciable controversy exists between Overwell, on one hand, and Widerhorn and Giedraitis, on the other, with respect to: (1) the adequacy of the notice under the Bylaws and Delaware law regarding the sale of the Company; and (2) the adequacy of the disclosure of the material facts concerning the sale of the Company's assets.

42. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff requests that this Court enter an order declaring: (1) that the notice by Defendant Widerhorn to the Company's Board members and the stockholders with respect the sale of the Company is inadequate and improper under the Company's Bylaws and Delaware law; and (2) that Defendants Widerhorn and Giedraitis have failed to disclose to the Board and the stockholders all of the material facts concerning the sale of the Company to Trading Technologies.

## CLAIM NO. 2
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

43. Plaintiff repeats and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 53 as set forth above.

44. Plaintiff has established a likelihood of success on the merits.

45. Plaintiff has established a threat of irreparable harm and the inadequacy of a remedy at law.

46. The balance of the harms weighs in favor of Plaintiff.

47. The Stockholders Agreement provides Plaintiff with the right to injunctive relief for breach of the Stockholders Agreement.

48. The Stockholders Agreement further establishes that no bond is required for any injunctive relief that may be requested.

## RESERVATION OF RIGHTS

49. Plaintiff reserves unto itself all available claims as may prove through discovery to be applicable. Plaintiff reserves the right to assert such claims as investigation and discovery may prove applicable. Plaintiff further reserves the right to amend this complaint if investigation, discovery, and further information warrant such amendment, and further, to assert any applicable matters of law during the pendency of this action.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims so triable pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests that the Court enter an order granting declaratory and injunctive relief in favor of Plaintiff and against Defendants, award Plaintiff its attorneys' fees and costs incurred in bringing this action, and for any other relief this Court deems just and equitable under the circumstances.

Dated:  August 21, 2017              By: /s/ John J. Scharkey

                                                    John J. Scharkey
                                                    Robert D. Sweeney
                                                    SWEENEY & SCHARKEY LLC
                                                    111 West Washington Street
                                                    Burnham Center, Suite 1160
                                                    Chicago, Illinois 60602
                                                    (312) 384-0500

                                                    *Counsel for Plaintiff*
                                                    *Overwell Harvest Limited*

## VERIFICATION

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: August 21, 2017

OVERWELL HARVEST LIMITED

By: _____
Kenneth Chu, Director