## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

OVERWELL HARVEST LIMITED, a British )
Virgin Islands company, individually and )
derivatively on behalf of Neurensic, Inc. )
                                  )
         Plaintiff,                 )
                                    )      No. 17 C 6086
      v.                         )
                                    )      Judge Sara L. Ellis
DAVID WIDERHORN, PAUL GIEDRAITIS, )
and TRADING TECHNOLOGIES )
INTERNATIONAL, INC. )
                                    )
         Defendants.             )

## OPINION AND ORDER

Overwell Harvest Limited ("Overwell") brought this lawsuit, individually and derivatively in its capacity as a Neurensic, Inc. ("Neurensic") shareholder, against Neurensic's Chief Executive Officer, David Widerhorn, and its Chief Operating Officer, Paul Giedraitis, to ensure the sale of Neurensic was lawful, and after the sale, to assert various breach of fiduciary duty claims against Widerhorn and Giedraitis.[1] After the sale of Neurensic to Trading Technologies International, Inc. ("Trading Technologies"), Overwell added Trading Technologies to the lawsuit, alleging it aided and abetted certain of Widerhorn and Giedraitis' breaches. On November 21, 2021, the Court denied Overwell and Trading Technologies' cross-motions for summary judgment, finding that questions of material fact exist with respect to each element of Overwell's aiding and abetting claim against Trading Technologies. Doc. 233.

---

[1] Widerhorn filed for bankruptcy on December 15, 2017, automatically staying the proceedings against him, and on October 25, 2021, the Court approved a settlement agreement between Overwell and Giedraitis.

Trading Technologies now asks the Court to reconsider its decision. Because Trading Technologies fails to present newly discovered evidence or point to evidence in the record that clearly establishes a manifest error of law or fact, the Court denies its motion for reconsideration.

## BACKGROUND

Neurensic was a Delaware start-up corporation founded by Widerhorn, Giedraitis, and two others in 2015. Overwell was one of Neurensic's shareholders and its largest investor, investing a total of $3.5 million in the company from December 2015 to August 2016. Widerhorn was the only shareholder that held more Neurensic stock than Overwell. But Overwell held a seat on Neurensic's Board of Directors and certain preferred stock options that entitled it to the first $8 million owed to Neurensic's shareholders from any sale of Neurensic or its assets. By October 2016, Neurensic's financial status was dire and Widerhorn indicated that without immediate funding, Neurensic would need to file for bankruptcy. Accordingly, Widerhorn and Giedraitis began discussions with potential acquirers, including Trading Technologies.

By August 2017, Neurensic was insolvent and Trading Technologies was the only remaining potential acquirer. On August 22, 2017, Overwell filed this lawsuit against Widerhorn and Giedraitis and an application for a temporary restraining order ("TRO") to stop the sale of Neurensic to Trading Technologies. On September 7, the Court ordered that Widerhorn and Giedraitis "take no action with respect to the sale of [Neurensic's] assets unless and until the Board satisfies all applicable requirements of Delaware law and the Bylaws of Neurensic." Doc. 19 at 1. One week later, a majority of Neurensic's Board (Widerhorn and Giedraitis) voted to approve the sale of Neurensic to Trading Technologies. The next day, as required by

Neurensic's bylaws and the Court's order, Widerhorn provided notice of the sale to Neurensic's shareholders and scheduled a final shareholder meeting to vote on the sale on October 5, 2017.

Ultimately, on October 5, Neurensic's shareholders voted to approve the sale and on October 6, Neurensic sold its assets to Trading Technologies for $400,000 in cash with the possibility for true-up and earn-out payments. However, prior to the final shareholder vote, Trading Technologies hired Neurensic employees and took possession of certain Neurensic assets and confidential information. In March 2018, Overwell amended its complaint against Widerhorn and Giedraitis, alleging they breached their fiduciary duties to Neurensic's shareholders in managing the company and in connection with the sale of Neurensic's assets. In June 2018, Overwell added Trading Technologies to the lawsuit, alleging it aided and abetted Widerhorn and Giedraitis in certain breaches by facilitating the transfer of Neurensic confidential information, assets, and employees to Trading Technologies prior to the sale. After the close of discovery, Trading Technologies and Overwell filed cross-motions for summary judgment. On November 21, 2021, the Court denied the parties' cross-motions. Doc. 233. Subsequently, on November 24, Trading Technologies filed a motion for reconsideration.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 54(b), the Court has the inherent authority to reconsider its interlocutory orders because such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). The standards for motions for reconsideration under Rule 54(b) are largely the same as those under Rule 59(e). *See Siemens Transformadores S.A. de C.V. v. Soo Line R.R. Co.*, No. 10 C 3750, 2012 WL 1938848, at *1 (N.D. Ill. May 29, 2012) (collecting cases). Motions for reconsideration serve a

3

limited purpose and are only appropriate if "the movant presents newly discovered evidence that was not available at the time of [summary judgment], points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments." *Starr Indem. & Liab. Co. v. YRC, Inc.*, No. 15-cv-6902, 2018 WL 905523, at *2 (N.D. Ill. Feb. 15, 2018).

## ANAYLSIS

Overwell brings one claim against Trading Technologies: aiding and abetting a breach of a fiduciary duty. To prove the claim, Overwell must show: (1) "the existence of a fiduciary relationship" between Neurensic's shareholders and Widerhorn and Giedraitis (2) "a breach of the fiduciary's [(Widerhorn and Giedraitis')] duty," (3) "knowing participation in that breach" by Trading Technologies, and (4) "damages proximately caused by the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). In its motion for summary judgment, Trading Technologies argued that the business judgment rule protects Widerhorn and Giedraitis' decisions and thus, no breach occurred, entitling Trading Technologies to summary judgment in its favor. However, the Court found that a question of fact exists as to whether the business judgment rule applies in this case and thus, summary judgment is inappropriate. Doc. 233 at 21. Trading Technologies now argues that the Court should reconsider its application of the business judgment rule because "the Court misapprehended" the appropriate summary judgment standard. Doc. 235 at 1.

"The business judgment rule is a presumption that in making a business decision . . . the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Lowinger v. Oberhelman*, 924 F.3d 360, 366 (7th Cir. 2019) (alteration in original) (citation omitted). The Court found that a juror

4

could reasonably infer from the record that "Widerhorn and Giedraitis acted with a purpose other than advancing the best interests of Neurensic by allowing the pre-sale transfers" and thus, whether the business judgment rule protects their decisions is a question for the trier of fact. Doc. 233 at 21. Trading Technologies does not contest that a director fails to act in good faith when acting with a purpose other than advancing the best interests of the corporation. *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006) ("A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." (citation omitted)). But Trading Technologies contends that, at the summary judgment stage, to rebut the business judgment rule on bad faith grounds, a plaintiff must produce evidence showing that "the director had an improper *motive*" and that "the director's acts were so egregious or irrational that they *must* have been taken in bad faith." Doc. 235 at 2. Trading Technologies argues that the Court failed to apply this standard and as a result, inappropriately denied Trading Technologies' motion.

Under Delaware law, the business judgment rule does not "shield a director who did not act in good faith." *In re Fleming Packaging Corp.*, 370 B.R. 774, 784 (C.D. Ill. 2007). In other words, "[a] plaintiff can rebut the rule by showing that the fiduciaries 'in reaching [their] challenged decision, violated any one of [the] triad of fiduciary duties: due care, loyalty, or good faith.'" *In re W.J. Bradley Mortg. Cap., LLC*, 598 B.R. 150, 164 (D. Del. 2019) (alterations in original) (citation omitted). Therefore, although the Court must first presume that Widerhorn and Giedraitis acted in good faith, *Lowinger*, 924 F.3d at 366, under Rule 56(a), if a juror can reasonably infer from the record that they failed to act in good faith when facilitating the pre-sale transfers, then the Court must find that a genuine issue of material fact exists regarding whether the business judgment rule protects their decisions, *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568

(7th Cir. 2017); *see also Zimmerman v. Crothall*, No. 6001, 2012 WL 707238, at *5 (Del. Ch. Mar. 5, 2012) ("To avoid the application of business judgment deference [on summary judgment], the burden lies with the plaintiff 'to establish a genuine issue of material fact as to whether the directors were independent, disinterested, informed, or acting in good faith.'" (citation omitted)).  "[F]ailure to act in good faith often is not easily categorized" under Delaware law.  *In re Novell, Inc. S'holder Litig.*, No. 6032, 2014 WL 6686785, at *7 (Del. Ch. Nov. 25, 2014).  But it "may be shown . . . where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation."  *Walt Disney*, 906 A.2d at 67 (citation omitted).

As the Court explained, based on the record, a juror could reasonably infer that the following actions constituted a misuse of confidential information or an otherwise wrongful act: Jay Biondo's access to and use of Neurensic's data, software, and email to work with Neurensic clients[2] while employed by Trading Technologies; the pre-sale transfer of certain Neurensic assets and confidential information to Trading Technologies; and the pre-sale hire of Morgan Trinkaus and Eric Eckstrand.  Thus, a question of fact exists as to whether Widerhorn and Giedraitis intentionally acted with a purpose other than advancing the best interests of Neurensic when allowing Trading Technologies, a competitor, access to and use of its confidential information.  *See Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601–02 (Del. Ch. 2010) (finding that misusing confidential information is one way a fiduciary can "plac[e] himself in a position antagonistic to his principal"); *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, No. 3290, 2009

---

[2] The Court acknowledges that it mistakenly wrote "employees" instead of "clients" in one sentence in its summary judgment opinion.  *See* Doc. 233 at 17 ("Therefore, a genuine issue of material fact exists as to whether Biondo's access to and use of Neurensic data, software, and email to work with Neurensic employees while employed by Trading Technologies constituted a misuse of Neurensic's confidential information of which Widerhorn and Giedraitis approved.").

WL 1387115, at *15 (Del. Ch. May 18, 2009) (noting director has "a duty not to use or communicate confidential information of the [corporation] for the [director's] own purposes or those of a third party"). Accordingly, a jury must decide whether Widerhorn and Giedraitis acted in good faith and whether the business judgment rule protects their decisions.

Trading Technologies argues that there is no evidence that Widerhorn and Giedraitis "acted out of self-interest or purposefully abandoned Neurensic's interests in favor of some other agenda" when facilitating the pre-sale transfers and therefore, Overwell fails to rebut the presumption of good faith. Doc. 235 at 9. However, as explained above, one could reasonably infer from the record that Widerhorn and Giedraitis intentionally acted with a purpose other than advancing the best interests of Neurensic by facilitating the transfers of confidential information, assets, and employees to a competitor. Trading Technologies relies on *Chen v. Howard-Anderson* in arguing that disclosing confidential information to a competitor is not enough to create a genuine issue of fact regarding whether directors acted in good faith. 87 A.3d 648, 685 (Del. Ch. 2014) (granting director summary judgment where he favored one bidder throughout the sales process and shared confidential information with his favored bidder, who was also a competitor). However, the allegations in *Chen* differ from those present here and therefore, the appropriate standard of review and analysis differ as well.

In *Chen*, the plaintiffs alleged that the directors "acted unreasonably by favoring [one bidder] and failing to develop or pursue other alternatives that could have generated higher value for the stockholders" during a merger, *id.* at 673; in other words, they alleged that the directors breached their *Revlon* duties, *see In re BioClinica, Inc. S'holder Litig.*, No. 8272, 2013 WL 5631233, at *6 (Del. Ch. Oct. 16, 2013) (noting *Revlon* duties arise "[w]hen directors engage in efforts to sell a company" and require "that their goal must be to maximize the value of the

company").  Therefore, the *Chen* court found that the evidence, which indicated that the director favored one bidder, in part by sharing confidential information about "boardroom dynamics" with them during the bidding process, "d[id] not support any inference other than an effort to achieve a transaction that he believed would maximize the value of his funds' holdings, thereby maximizing value for all common stockholders."  87 A.3d at 685.  Here, Overwell alleges that Trading Technologies aided and abetted Widerhorn and Giedraitis in the transfer of certain Neurensic confidential information, assets, and employees to Trading Technologies prior to the final shareholder vote, which caused harm to Neurensic's shareholders by making the sale to Trading Technologies a *fait accompli*.  Thus, the Court interprets the alleged breaches aided and abetted by Trading Technologies as misusing confidential information in violation of Widerhorn and Giedraitis' duty to act in good faith, not mismanaging the sale process in violation of their *Revlon* duties.  In this context, one could reasonably infer that Widerhorn and Giedraitis failed to act in the best interests of Neurensic by transferring confidential information, assets, and employees to a competitor when the company was on the verge of bankruptcy and in the midst of negotiating an acquisition.  As a result, *Chen* is not on point.[3]

---

[3] Trading Technologies also relies on *In re Novell, Inc. Shareholder Litigation*, which states, "[t]o survive the motion for summary judgment, given the circumstances of this case, Plaintiffs must support their claims not only with evidence showing that the Board's actions were unreasonable but also with evidence that the board members were motivated by some improper purpose that makes their conduct culpable." 2014 WL 6686785, at *8.  However, again, the allegations in *Novell* differ from those present here and thus, the appropriate standard and analysis differ.  In *Novell*, the plaintiffs also "allege[d] that director Defendants acted in bad faith by treating bidders differently [during a merger and patent sale] for reasons other than pursuit of the best interests of the corporation and its stockholders" in violation of *Revlon*, *id.* at *1, but the court found that the evidence regarding the directors' differential treatment of bidders "stemmed from a decision" that "would maximize value for shareholders" and accordingly granted summary judgment to the directors, *id.* at *8.  Here, Overwell alleges that Trading Technologies aided and abetted Widerhorn and Giedraitis' misuse of confidential information, not their alleged mismanagement of the bidding process, and a juror could reasonably infer from the record that Widerhorn and Giedraitis intentionally acted with a purpose other than advancing the best interests of Neurensic when doing so.

8

Further, it is not dispositive that Overwell has failed to specify which improper motive Widerhorn and Giedraitis acted upon when deciding to facilitate the transfers or to show that Widerhorn and Giedraitis did not stand to gain a financial benefit from the transfers. *See In re Answers Corp. S'holders Litig.*, No. 6170, 2014 WL 463163, at *10 (Del. Ch. Feb. 3, 2014) ("[A] plaintiff's inability to explain a Board's motivation to act in bad faith *may* also be *relevant* in analyzing bad faith claims." (emphasis added)); *Chen*, 87 A.3d at 684 ("[A] range of human motivations . . . can inspire fiduciaries and their advisors to be less than faithful to their contextual duty to pursue the best value for the company's stockholders. Greed is not the only human emotion that can pull one from the path of propriety; so might hatred, lust, envy, revenge, . . . shame or pride. Indeed any human emotion may cause a director to place his own interests, preferences or appetites before the welfare of the corporation." (alterations in original) (citations omitted)). Instead, as Trading Technologies acknowledges, "[t]he dispositive issue raised herein is whether [Overwell] has presented sufficient evidence to create a genuine issue of fact as to whether Widerhorn and Giedraitis decided to allow the transfers out of *some* impure, improper motive." Doc. 235 at 9 (emphasis added). As explained, Overwell has done just that.

Trading Technologies further argues that even if Overwell presented evidence that Widerhorn and Giedraitis acted with an improper motive, "a claim of bad faith fails as a matter of law if the evidence shows that the challenged decisions can be attributed to any rational business purpose." *Id.* at 12. However, Trading Technologies misapprehends the summary judgment standard. At this stage, Overwell must only present evidence sufficient to create a question of fact as to whether Widerhorn and Giedraitis acted in good faith when making the decisions. *See Hay Grp. Mgmt., Inc. v. Schneider*, 965 F.3d 244, 251 (3d Cir. 2020) ("A party moving for summary judgment must demonstrate that there is no genuine dispute of material

fact. Under the business judgment rule, such a dispute includes whether [the director] 'breached [his] fiduciary duty of care or of loyalty or acted in bad faith.'" (citations omitted)); *Zimmerman*, 2012 WL 707238, at *5 ("To avoid the application of business judgment deference [on summary judgment], the burden lies with the plaintiff 'to establish a genuine issue of material fact as to whether the directors were independent, disinterested, informed, or acting in good faith.'" (citation omitted)). Showing that their decisions were irrational is merely one way to do so. *See McDowell v. Bracken*, 794 F. App'x 910, 915–16 (11th Cir. 2019) ("To overcome [the business judgment rule] presumption here, [plaintiff] must show that the Board's actions were not taken in good faith—*such as* by showing that a decision was 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" (emphasis added) (citation omitted)); *Chen*, 87 A.3d at 684 ("Yet under the business judgment rule, Delaware's most director-friendly test, a plaintiff *can* plead (and later prove) bad faith by showing that a decision lacked any rationally conceivable basis, which permits a court to infer an improper motive and a breach of the duty of loyalty." (emphasis added)); *Zimmerman*, 2012 WL 707238, at *5 ("Because this burden requires the plaintiff to show 'that the directors' decision was either wholly-irrational *or* motivated by self-interest *or* bad faith on the part of the directors approving the transaction,' it is often a difficult hurdle to overcome." (emphasis added) (citation omitted)). Regardless, a reasonable juror could conclude that Widerhorn and Giedraitis' decision to facilitate the transfer of confidential information, assets, and employees to a competitor when the company was on the verge of bankruptcy "was 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" *McDowell*, 794 F. App'x at 916 (citation omitted). Thus, granting summary judgment in favor of Trading Technologies is not supported by the record or appropriate legal standard used by this Court.

**CONCLUSION**

For the foregoing reasons, the Court affirms its summary judgment ruling and denies

Trading Technologies' motion for reconsideration [235].


Dated: March 23, 2022

SARA L. ELLIS
United States District Judge