**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

OVERWELL HARVEST LIMITED, )
a British Virgin Islands company, )
individually and derivatively on )
on behalf of NEURENSIC, INC., )
  )
  )     Civil Action No. 1:17-cv-06086
      *Plaintiff*, )
  )     Honorable Sara L. Ellis
           v. )
  )
DAVID WIDERHORN, )
PAUL GIEDRAITIS, and )
TRADING TECHNOLOGIES )
INTERNATIONAL, INC., )
  )
      *Defendants*. )

<u>**PLAINTIFF'S MOTIONS IN LIMINE**</u>

Plaintiff Overwell Harvest Limited ("<u>Overwell</u>"), by and through its undersigned counsel, submits the following motions in limine and states as follows:

**INTRODUCTION**

This action arose following the sale of substantially all of the assets of Neurensic, Inc. ("<u>Neurensic</u>") to Trading Technologies. David Widerhorn and Paul Giedraitis failed maximize stockholder value as was their duty under applicable law. Through their breach, aided by Trading Technologies, their failure to pursue a competitive bidding process for Neurensic's assets, and their blatant disregard for orders of this Court, Trading Technologies was able to enter the market in the trade surveillance space by paying only a fraction of the value of Neurensic's assets. Overwell now seeks to recover from Trading Technologies for its intentional and willing participation in aiding and abetting Widerhorn and Giedraitis's breach of fiduciary and subsequent injury suffered as a result.

I. **Overwell's first motion in limine to bar reference to and the introduction of evidence related to national origin and financial status of Overwell's Board of Directors.**

Overwell, a special-purpose entity created for the purpose of investing in Neurensic, has three directors on its board: Kenneth Chu, Benedict Ng, and Hilton Tam. All three individuals have significant and notable ties to China, either through their former or current residencies, national origin, or corporate ventures. Reference to their national origin and their individual financial status and the introduction of evidence related to such topics should be barred because (i) any such evidence fails to meet the requirements of relevant evidence under Federal Rule of Evidence 401, and (ii) the probative value of such evidence is greatly outweighed by the danger of unfair prejudice given the current political climate between the United States and China, which militates in favor of excluding it under Federal Rule of Evidence 403.

To qualify as relevant under Rule 401, evidence must (a) have "any tendency to make a fact more or less probable than it would be without the evidence;" and (b) be "of consequence in determining the action." Fed. R. Evid. 401. The current action is brought by Overwell, derivatively on behalf of Neurensic, stems from facts surrounding the acquisition of substantially all of Neurensic's assets by Trading Technologies and the conduct of Defendants while the Court's injunction order was in place and prior to the close of the sale of such assets. As such, the nationality and residence of the members of Overwell's board of directors, which bears no relevance to the alleged wrongdoing of the Defendants, should not be referenced, introduced, or discussed. Similarly, references to and the introduction of evidence related to the wealth or financial status of Overwell's board of directors—which has no support in the evidentiary record, other than Trading Technologies' speculation—should also be barred, as it too falls far short of the requirements set forth in Rule 401. As a derivative suit, Overwell's focus is to represent and recover damages on behalf of the stockholders of Neurensic. Personal background information on

Overwell's board of directors is thus far removed from the relevant universe of facts at the center of this dispute and would only be introduced to unfairly prejudice the jury against Overwell and the claims asserted in this action.

Further, and in addition to the irrelevancy of this information described above, the prejudicial effect that references to or the introduction of evidence related to the national origin or financial wellbeing of Overwell's board of directors will have greatly outweighs any probative value such information. It should thus be excluded under Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In light of the current political climate and the fairly fragile state of U.S./Chinese relations, prohibiting reference to and the introduction of evidence related to the nationality and country of residence of the members of Overwell's board is warranted in order to preserve the impartiality of the jury and ensure a fair trial. This concern cannot be properly screened through other means, such as through a jury questionnaire or *voir dire*, due to the critical attention afforded to China and its government through media coverage and other outside influences on a daily basis.

Similarly, this threat to the integrity of potential jurors is exacerbated when paired with reference to or evidence of the financial status or wealth of any of the three individuals on Overwell's board. The consequences of the failure to bar this type of information has previously been noted by courts in this district, most recently in *Black & Decker Corp. v. Positec USA Inc*, Case No. 11-cv-5426, 2015 U.S. Dist. LEXIS 127193 (N.D. Ill. Sept. 22, 2015). The defendants in *Black & Decker* brought a motion in limine to bar the plaintiffs from introducing evidence or making any reference at trial to the fact that defendants were owned by a Chinese entity or that the

products at the center of plaintiff's trademark infringement claims were made in China. *Black & Decker Corp.*, 2015 U.S. Dist. LEXIS 127193 at *4-6. Although such motion in limine was originally denied by the court, with the benefit of hindsight, it later acknowledged—and ultimately excluded—the unfairly prejudicial evidence in the form of the plaintiffs' repeated references to "China as the origin of [d]efendants' products and to the 'Chinese billionaire' who founded [d]efendants" in its opinion granting the defendants' motion for a new trial. *Black & Decker Corp.*, 2017 U.S. Dist. LEXIS 147463, at *18 (N.D. Ill. Sept. 11, 2017). In doing so, the court in *Black & Decker* stated:

> [A]t the new trial all parties will be barred from referencing the fact that Defendants' founder is a "Chinese billionaire" or referencing the origin of Defendants' products. As it played out at the first trial, these facts have very limited (if any) relevance to the case and may unfairly lead a jury to conclude that a very large verdict is appropriate against a "Chinese billionaire" who has attempted to pass off his products as American-made.

*Id*. Accordingly, and to avoid the same prejudicial impact identified by the court in *Black & Decker*, reference to and/or identifying Overwell's board members as "wealthy Chinese investors" or other comparable descriptions should be barred. The irrelevance of this information, combined with the prejudice that referencing or presenting evidence related to the nationality, current country of residence, and the financial means of Overwell's board of directors would cause, greatly favors precluding the use of such information in the present matter.

## II. Overwell's second motion in limine to bar the testimony of Michael G. Ryan and the use of the Declaration of Michael G. Ryan filed on May 14, 2021.

Counsel for Trading Technologies recently informed Overwell's counsel that it intends to call Michael G. Ryan ("Ryan"), Trading Technologies' Chief Legal Officer, as a fact witness at trial. Trading Technologies' identification of Ryan as a trial witness violates a fundamental stipulation between the parties. The parties specifically stipulated that only witnesses that were

identified *and* deposed witnesses would be called at trial. Although Ryan was identified, Trading Technologies repeatedly stated that his deposition would be a needless expenditure of time and resources as his putative testimony would generally relate to privileged matters. Consequently, Ryan should be barred from testifying. "[O]nce made, a stipulation is binding unless relief from [it is] necessary to prevent a manifest injustice or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law." *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (citation omitted); *Pittman v. Cty. of Madison*, 863 F.3d 734, 736 (7th Cir. 2017) (holding same). No manifest injustice, inadvertence, or error of fact or law warrants violating the parties' discovery stipulation here.

Further, given Ryan's current position at Trading Technologies and his role as Executive Vice President and General Counsel at the time of the Neurensic sale, Trading Technologies' prejudicial strategy to use Ryan's role as an attorney as a sword at trial through his testimony, yet as a shield during the fact-discovery phase of this litigation—which it did repeatedly throughout the depositions in this matter—is further reason to exclude the introduction of his testimony at trial under Rule 403.

In addition to its recent decision to call Ryan as a trial witness, Trading Technologies also filed a declaration authored and executed by Ryan as an exhibit in support of its motion for summary judgment (ECF 189, Ex. 4) on May 14, 2021. This declaration, which provides Ryan's legal opinion on the enforceability of the restrictive covenants by and between certain Neurensic employees and Neurensic "based on [his] more than two decades of experience as an in-house attorney," is a further illustration of Trading Technologies' sword and shield tactic and wholly irrelevant to the Court's ultimate determination on the duties and obligations owed to Neurensic by its former employees, both contractually and at common law. It should thus be barred from

being introduced or relied on at trial for failing to meet the requirements of Federal Rule of Evidence 401.

### A. The November 2020 Mutual Agreement Between Counsel for the Parties.

In an extensive email exchange between counsel during November 2020, counsel for Trading Technologies indicated that it would only be deposing two Overwell witnesses, Kenneth Chu and Benedict Ng, based on counsel for Overwell's assurances that, despite the numerous witnesses with relevant knowledge identified in Overwell's Rule 26(a) initial disclosures, these were the only two Overwell witnesses, other than witnesses who would be called adversely, that would testify in Plaintiff's case in chief. In response, counsel for Overwell confirmed that it would honor the parties' stipulation and requested that Trading Technologies verify that it too would not be calling any witnesses at trial outside of those identified and deposed. Subsequently, counsel for Trading Technologies stated:

> I appreciate the confirmation on your end, and I can represent on behalf of Trading Technologies that, should this case proceed to trial, Trading Technologies has no intention of calling any witness other than the individuals who already have been deposed during fact discovery and, potentially, certain individuals who have yet to be deposed but have been mentioned in this email exchange.[1]

(A true and accurate complete copy of the November 2020 email exchange between counsel is attached hereto as Exhibit A.) Ryan is neither mentioned nor identified throughout the entire email thread. Based on the parties' stipulation, Overwell did not depose Ryan and built its strategy for this litigation on the belief that Trading Technologies would adhere to such stipulation. This included various aspects of other fact witnesses deposition testimony, which Overwell elected to forgo. It was not until the parties' respective counsel attended a meet-and-confer on August 9,

---

[1] The witnesses discussed in the parties' November 2020 email exchange to be deposed are: the Neurensic Rule 30(b)(6) corporate representative; David Widerhorn; Kenneth Chu; Benedict Ng; and the Overwell Rule 30(b)(6) corporate representative.

2022, that Overwell learned for the first time that Trading Technologies intended to violate the stipulation and now wishes to chart a different course for trial.

As fact discovery closed in this case on December 18, 2020 (ECF 164), Trading Technologies' recently revealed intention to breach the long-standing stipulation between the parties greatly prejudices Overwell—the party that charted its trial strategy based on the parties' stipulation. Further, any attempt to "cure" the prejudice, such as by reopening fact discovery for the limited purpose of deposing Ryan, would result in significant and unnecessary additional expense, which Overwell should not be required to incur. It could additionally have a detrimental waterfall effect on the "completion" of fact discovery itself—such as by opening the door to additional avenues of desired written and oral discovery and calling into question testimony and documents previously withheld on the basis of a privilege defense.

The after-the-fact addition of Ryan as a trial witness could detrimentally impact the trial as well, as issues and disputes relating to privilege would inevitably present themselves, likely as contemporaneous objections requiring significant analysis by the Court and counsel while the jury is empaneled. Finally, Trading Technologies has offered no reasonable explanation for its decision to walk back a stipulation that Overwell has relied on and abided by for almost two years, well after the close of fact discovery. When confronted with the language from his own email agreeing to limit the pool of potential trial witnesses to only those who had previously been deposed, counsel for Trading Technologies claimed that his statement was only true "at the time"—implying that it somehow held the unilateral right to alter the terms of the parties' stipulation at a later date. (A true and correct copy of counsel for Trading Technologies' August 10, 2022 email to Overwell's counsel is attached hereto as Exhibit B.)  Such attempted justification is a farce and should not be

tolerated. To avoid the prejudicial impact of Trading Technologies calling of Ryan as a witness at trial, Ryan should be barred from testifying under Federal Rule of Evidence 403.

### B. Trading Technologies' Use of the Privilege Defense as a Sword and Shield.

Throughout the course of this action, Trading Technologies has consistently used Ryan's position as the company's general counsel as a defense to discovery requests and lines of inquiry at depositions. (*See, e.g.*, Dep. of M. Kraines, 258:22-259:4; *Id.* at 272:20-273:2, a true and correct copy of which is attached hereto as Exhibit C.) ("If he asks you about the substance of your conversation with [Ryan], about it, or anything or – or what was going on in the litigation then – then you shouldn't respond.") Now, having decided it no longer wants to abide by its stipulation not to call witnesses that have not been deposed, Trading Technologies presumably intends to elicit and introduce the testimony of Ryan at trial to attack Overwell's allegations and undermine the facts upon which its opponent intends to rely. This "sword and shield" strategy for the use of the attorney-client privilege defense has long been rejected by courts in this district and contradicts well-established Seventh Circuit precedent. *See DR Distribs., LLC v. 21 Century Smoking, Inc.*, Case No. 12-cv-50324, 2015 U.S. Dist. LEXIS 115974, at *9-10 (N.D. Ill. Sept. 1, 2015) ("The parties agree on the general proposition that a litigant cannot use the attorney-client privilege as both a sword and a shield. Stated differently, a party cannot assert reliance on advice of counsel, but then assert the attorney-client privilege to shield the disclosure of that advice.") (citing *Rhone-Poulenc Rorer, Inc. v. Home Indemnit Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[A]dvice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.")); *see also Avery Dennison Corp. v. UCB Films PLC*, Case No. 95-cv-6351, 1998 U.S. Dist. LEXIS 15727, at *13 (N.D. Ill. Sept. 30, 1998) ("Reliance upon counsel's opinions is a waiver of privilege because to hold

otherwise would be inherently unfair; it would allow a party to use privileged material as a 'sword' to attack the opposing party's allegations of bad faith, while hiding the basis of its good faith belief behind the 'shield' of privilege.").

Permitting Trading Technologies to deploy a "sword and shield" tactic through the introduction of testimony from Ryan at trial would add yet another layer to the prejudicial impact Trading Technologies' attempted back-door inclusion of Ryan as a trial witness would have on Overwell. To avoid such obvious prejudice and ensure a fair and just trial, this Court should enforce the parties' stipulation and preclude Ryan from testifying at trial.

### C. Ryan's Declaration Filed May 14, 2021.

In support of its motion for summary judgment, Trading Technologies submitted to the Court a declaration executed by Ryan aimed at refuting Overwell's well-supported contention that Trading Technologies knowingly and willingly participated in the breaches of fiduciary duties committed by certain Neurensic employees and the subsequent failure to enforce such employees' contractual and common law obligations to Neurensic by David Widerhorn and Paul Giedraitis. Not only is Ryan's declaration yet another example of the prejudicial "sword and shield" strategy deployed by Trading Technologies in this case—calling on Ryan to provide relevant information when beneficial to its defense yet claiming attorney-client privilege when its witnesses were subjected to questioning under oath—but the declaration also provides Ryan's opinion on the enforceability of the restrictive covenants contained in the employment agreements between Neurensic and Jay Biondo, Morgan Trinkaus, and Eric Eckstrand, who all began working for and servicing Neurensic customers on behalf of Trading Technologies before the close of the sale. Such unsupported legal conclusion fails to "make the existence of any fact that is of consequence

to the determination of the action more or less probable" and should thus be excluded as irrelevant. Fed. R. Evid. 401.

First and foremost, it is well established that the enforceability of a restrictive covenant is a question of law for the Court, not the trier of fact. *See W. Capra Consulting Grp., Inc. v. Snyder*, Case No. 1:19-cv-4188, 2019 U.S. Dist. LEXIS 140692, at *22 (N.D. Ill. Aug. 20, 2019) ("The enforceability of a restrictive covenant in Illinois is a question of law[.]"); *Call One, Inc. v. Anzine*, Case No. 18-cv-124, 2018 U.S. Dist. LEXIS 96169, at *15 (N.D. Ill. Jun. 7, 2018) ("The reasonableness of a postemployment restrictive covenant is a question of law."). As such, and despite Ryan's "more than two decades of experience as an in-house attorney," Ryan's declaration and specifically his personal belief as to the enforceability of the Neurensic restrictive covenants at issue have no bearing on the questions of fact that will be presented to and decided by the jury in this matter. This alone prevents Trading Technologies from submitting as evidence and relying on Ryan's declaration, as it fails to meet the requirements of relevant evidence set forth in Federal Rule of Evidence 401. Further, permitting such evidence would only serve to confuse the jury who would be given the opportunity to review and consider evidence that is irrelevant to resolution of the factual disputes at hand. To avoid such scenario, and in addition to its failure to qualify as relevant evidence under Rule 401, Ryan's declaration should be excluded.

Furthermore, the introduction of such testimony from Ryan runs the risk of unfair prejudice insofar as the jury may attribute more weight to the testimony because of Ryan's stature as the Chief Legal Officer at Trading Technologies specifically and as a member of the bar in general.

### III. Overwell's third motion in limine to bar the testimony of Paul Giedraitis.

As with Michael G. Ryan, during the August 9, 2022 meet-and-confer between counsel Trading Technologies stated its intent to call Paul Giedraitis ("Giedraitis") as a fact witness at trial.

Giedraitis, like Ryan, was never deposed during fact discovery and thus cannot be called to testify at trial pursuant to the November 2020 stipulation between the parties. Akin to Ryan, Giedraitis should thus be precluded from testifying at trial as a fact witness under Federal Rule of Evidence 403 due to the prejudicial effect of Trading Technologies' inexcusable desired breach of such agreement. Re-opening discovery will have a cascading effect and will essentially operate as a redo—which Trading Technologies may now want but which should not be sanctioned. Giedraitis, like Ryan, should thus be precluded from testifying at trial.

Dated:    August 12, 2022                          Respectfully submitted,

                                                   */s/ William C. O'Hara*
                                                   John J. Scharkey
                                                   Robert D. Sweeney
                                                   William C. O'Hara
                                                   SWEENEY, SCHARKEY & BLANCHARD LLC
                                                   230 West Monroe Street
                                                   Suite 1500
                                                   Chicago, Illinois 60606
                                                   (312) 384-0500

                                                   *Counsel for Overwell Harvest Limited*

### CERTIFICATE OF CONFERENCE

Pursuant to the Court's Local Rules and Pretrial Procedures, I hereby certify that on August 9, 2022 and August 10, 2022, I conferred with David J. Doyle, counsel for Trading Technologies, regarding the foregoing motions in limine. The parties were unable to reach an accord on the issues contained herein.

Dated: August 12, 2022

/s/ William C. O'Hara

### CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system which will automatically send all necessary notifications of this filing to all counsel of record.

Dated: August 12, 2022

/s/ William C. O'Hara