**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OVERWELL HARVEST LIMITED, a British Virgin Islands company, individually and derivatively on behalf of Neurensic, Inc., | |
| *Plaintiff*, | |
| v. | Case No. 17-cv-06086 |
| DAVID WIDERHORN, PAUL GIEDRAITIS, and TRADING TECHNOLOGIES INTERNATIONAL, INC., | Honorable Sara L. Ellis |
| *Defendants*. | |

**PLAINTIFF'S RESPONSE TO DAUBERT MOTION**

Plaintiff Overwell Harvest Limited ("Overwell"), through its undersigned counsel, submits this response in opposition to the motion filed by Defendant Trading Technologies International, Inc. ("Trading Technologies") to exclude the testimony of Overwell's expert witness John Finnerty ("Finnerty"), and states the following in support:

Trading Technologies presents no grounds on which to exclude Finnerty's testimony. As an initial point, Trading Technologies' primary argument—that Finnerty improperly employed hindsight in reaching his valuation range—is squarely false and premised on a misrepresentation of Finnerty's report and testimony. Even ignoring Trading Technologies' reliance on a false description of Finnerty's opinions, its motion exemplifies an all-too-typical trend in *Daubert* practice, purporting to attack the admissibility of an expert's opinions but actually addressing only their weight. Additionally, Finnerty's opinions regarding the sales process and the possibility of higher bids from Overwell are admissible, from a qualified source, and will assist the jury's factfinding mission. For these reasons, Trading Technologies' *Daubert* motion should be denied.

## BACKGROUND

Overwell retained Dr. John Finnerty as an expert testifying witness in this case. Finnerty is an Academic Affiliate at the venerable AlixPartners, LLP, a financial and operational consulting firm, has previously consulted with other firms, was a non-audit Partner at PricewaterhouseCoopers Financial Advisory Services Group, and held investment banking positions at Morgan Stanley, Lazard Frères, McFarland Dewey, and Houlihan Lokey Howard & Zukin. Finnerty has extensive experience in business valuation, damages calculations, securities valuation, derivatives valuation, and solvency analysis. He has provided expert testimony in valuation disputes, securities matters, and other financial matters in federal and state courts and in alternative dispute resolution proceedings. Finnerty also serves as Professor of Finance at Fordham University, where he was the founding Director of the Gabelli School of Business' Master of Science in Quantitative Finance Program. He has published 16 books, including *Corporate Financial Management*, 5th ed., *Project Financing*, 3rd ed., and *Debt Management*, and has published more than 120 articles and professional papers concerning corporate finance, fixed income, and business and securities valuation.[1]

Finnerty offered his Report in this matter on January 5, 2021 and was deposed by Defendants' counsel on February 26, 2021 (which transcript is attached hereto as <u>Exhibit B</u>). His key opinions include: █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] A full list of Finnerty's credentials can be found at Appendix A to his Report. The full Report is attached as <u>Exhibit A</u> hereto.





Trading Technologies proffered the report of a rebuttal expert, Daniel Cummins, on March 15, 2021. Cummins was deposed on April 13, 2021.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Under that Rule, an expert's testimony must meet certain threshold requirements. If not, it must be excluded:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify . . . if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993) (interpreting Rule 702 as imposing a special obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable"). As courts repeatedly recognize, "[t]he purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

**ARGUMENT**

Trading Technologies' attempt to exclude Finnerty is based primarily on a misrepresentation of his valuation opinions. It is, furthermore, an improper attempt to prevent the jury from hearing testimony from both Finnerty and Trading Technologies' own rebuttal expert through direct and cross-examination. "The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Loeffel Steel Prods. v. Delta Brands*, 372 F. Supp. 2d 1104, 1110 (N.D. Ill. 2005) (citation and internal quotation marks omitted). None of Trading Technologies' arguments are compelling and the Court should deny its motion, leaving to the jury the job of weighing the competing, adversarial expert opinion testimony, which will, in the end, assist the jury in deciding the appropriate measure of damages in this case.

## I.    Finnerty Applied Reliable Principles and Methods to Reach His Conclusions.

Contrary to the noise in Trading Technologies' motion, Finnerty's opinions are based on reliable principles and methods—and Finnerty distinctly did *not* adopt the projections prepared by Trading Technologies in August 2020. Even if Finnerty *had* done so, however, Trading Technologies' motion should still fail, as it attacks the weight, and not the admissibility, of Finnerty's opinions. "As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *SEC v. Ustian*, 2020 U.S. Dist. LEXIS 14093, at *27 (N.D. Ill. Jan. 26, 2020) (Ellis, J.) (quoting *Loeffel*, 372 F. Supp. 2d at 1119).

### A. Trading Technologies' Motion Relies on a Falsehood.

Trading Technologies accuses Finnerty of "breach[ing] a cardinal rule of business valuation to which he himself professes adherence: valuations must be based solely on information that was known or knowable as of the valuation date." (Mot. at 1.) Specifically, Trading

Technologies claims that "Finnerty relies on sales projections Trading Technologies created *almost three years after the asset sale*." (*Id.*) As demonstrated in the background section above, Finnerty did *not* employ Trading Technologies' August 2020 projections. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Trading Technologies repeats its false claim, and variations upon it, throughout its motion. For example, Trading Technologies contends that "critically, *none* of Finnerty's revenue projections derive from data" that was known or knowable as of the valuation date (Mot. at 6); and that ████████████████████████████████████████████████

████████████████████████████████████████████ ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

Trading Technologies must rely on these falsehoods because Finnerty's Report and deposition tell a remarkably different story. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



As Finnerty did not rely on hindsight in reaching his valuation opinions, none of the cases Trading Technologies cites mandate exclusion. *See Weinman v. Crowley (In re Blair)*, 588 B.R. 605, 619 (Bankr. D. Colo. 2018) (excluding expert where "the entire Expert Report and proffered balance sheet for the Debtor are unreliable"). Unlike the expert in *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 530 B.R. 44, 221 (N.D. Ill. 2014), who was excluded based on "undisclosed and flawed inputs" in his DCF analysis, including the failure to properly discount, Finnerty specifically *did* discount his projections in arriving at his valuations to account for the inherent risks associated with the Neurensic assets. And in *First Nat'l Bank of Kenosha v. United States*, the court affirmed the *admission* of evidence that a party challenged as irrelevant to a valuation. 763 F.2d 891, 894– 95 (7th Cir. 1985) ("[T]he question to be asked of any proffered evidence is whether the

admission of the evidence would make more or less probable the proposition that the property had a certain fair market value on a given date," even if such evidence falls after the valuation date).

Trading Technologies claims that "it was wholly improper for Finnerty to use post-sale projections created by Trading Technologies because those projections do not represent the value that a typical, willing purchaser would have placed on Neurensic's assets as of the valuation date." (Mot. at 1.) But Finnerty neither used those projections nor believed them to represent the value that a purchaser would have placed on the Neurensic assets on the valuation date, as his testimony repeatedly makes clear. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████. In sum, the primary basis of Trading Technologies' motion, that Finnerty used projections dated three years post-sale, is untrue and the motion. Because the motion rests of a flawed, faulty, and—ultimately—false premise, it must, therefore, be denied.

**B. Trading Technologies Criticizes Finnerty for Refusing to Consider Post-Valuation Date Information.**

Having challenged Finnerty for allegedly using hindsight in his valuation, Trading Technologies then turns and, with apparently no shame, criticizes Finnerty for not incorporating the actual post-valuation date performance of the Neurensic assets. (Mot. at 1) (accusing Finnerty of selectively "ignoring other data showing that, following the sale, the assets performed even more poorly than anticipated when Trading Technologies purchased them from an insolvent company.").

Finnerty did not employ actual post-sale performance data because to do so would violate the acknowledged general tenet that valuations should only include information known or knowable as of the valuation date—as Trading Technologies spends pages arguing. Finnerty complied with this tenet in reaching each of his opinions.

**C. Trading Technologies' Motion Attacks the Weight, Not the Admissibility, of Finnerty's Opinions.**

Finally, even if Finnerty had wholesale adopted Trading Technologies' August 2020 projections, doing so would still not be cause for exclusion. It arguably could have weakened his opinion or raised questions about its ultimate correctness, but it would not have rendered it inadmissible. "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Chi. Teachers Union v. Bd. of Educ. of Chi.*, 2020 U.S. Dist. LEXIS 33202, at *3 (N.D. Ill. Feb. 25, 2020) (Ellis, J). Furthermore, "objections as to whether an expert considered certain factors that the opposing side deems irrelevant generally go to the weight of the expert's opinion, not its admissibility." *Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 963 (N.D. Ill. 2015). In this case, as in others, Trading Technologies "is free to attack that testimony via the normal adversarial process of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).[2] Trading Technologies is desperate to short circuit the adversarial process, knowing full well that Finnerty's testimony does not square with Trading Technologies' narrative.

Trading Technologies does not actually challenge Finnerty's methodology—indeed it would be difficult to do so, as DCF analysis is a widely recognized process for valuing companies, including companies in their nascent phase. Rather, Trading Technologies challenges Finnerty's conclusions and the underlying information he used to reach them. Such challenges do not make

---

[2] As an initial point, the case law makes clear that some post-valuation date information *can* be relevant for valuation purposes. Indeed, as stated in *First Nat'l Bank of Kenosha*, a case Trading Technologies cites, "courts have not been reluctant to admit evidence of actual sales prices received for property after the date of death, so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property." 763 F.2d at 894 (collecting cases); *see also In re Kimball Hill, Inc.*, 595 B.R. 84, 109 (Bankr. N.D. Ill. 2019) ("[T]he use of post valuation date information was appropriate in some circumstances.").

for successful *Daubert* motions. *See Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 148 (N.D. Ill. 2020) (Ellis, J.) ("Reliability [under *Daubert*], however, is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.") (citation omitted). In *Zollicoffer*, for example, defendants sought to exclude an expert because he purportedly relied on faulty data of questionable relevance. *Id.* at 148–49. The Court ruled that arguments about the relevance of underlying data went to the weight, not the admissibility, of the expert's opinion, and denied the *Daubert* motion. *Id.* at 149. *See also Smart Mktg. Grp. v. Publ'ns Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 19615, at *11 (N.D. Ill. Feb. 18, 2014) (Ellis, J.) (holding similarly).

"This flexible standard of admissibility is intended to foster competing evidence from experts on both sides of a case." *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 70 (Bankr. N.D. Ill. 2002) (citing *Daubert*, 509 U.S. at 589). "Even an expert's flawed conclusion is capable of helping the factfinder to understand the evidence. Thus, the court does not have to accept the validity of the conclusions reached by [an expert] for the evidence offered by [the expert] to be admissible." *Id.* As noted above, Finnerty's opinions are not flawed and do not, contrary to Trading Technologies' arguments, use improper post-valuation hindsight. But even if Finnerty did employ such hindsight, courts in the Northern District of Illinois have concluded that opinions, like Finnerty's, would remain admissible. Trading Technologies itself concedes that its motion is really about Finnerty's conclusions, which it finds unhelpful to its case. That is not surprising. "[H]ere, through his selective use of hindsight, Finnerty alchemizes the transaction at issue from what it was—a speculative investment in a money-losing enterprise of marginal value— into a bargain purchase of assets ███████████████ (Mot. at 2). Trading Technologies can cross-examine Finnerty to try to establish this argument; they cannot prevent him from testifying altogether.

## II. Finnerty's Opinions Regarding the Directors' Actions Are Helpful to, and Can Be Weighed by, the Jury.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

Trading Technologies' arguments that these opinions are not "the proper subject of expert testimony" and will not assist the jury (Mot. at 13)[3] are belied by the report and testimony of their own expert, Cummins, ████████████████████████████████████████ ██████████████████████████████████████████████.) Trading Technologies has not (and cannot) argue that their own expert is somehow more qualified than Finnerty to opine on the sales process. He is not. The jury should be allowed to hear from both witnesses.

## III. Finnerty's Opinion Regarding Overwell's Potential Bids Is Supported by Undisputed Evidence.

Finnerty's review of the evidence in the case led him to opine as follows:

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

---

[3] Trading Technologies' other argument, that the Court has ruled the sales process to be irrelevant to Overwell's claims, is both incorrect and addressed in motion-in-limine briefing. ECF No. 271 at 1–2.

███████████████████████████████████████████

████ Trading Technologies seeks to exclude this opinion on the purported basis that "Finnerty is not an expert in OHL's business practices, strategies, or thought processes. Because he is in no better position than a jury to decide how much OHL would have bid, his opinions will not assist the trier of fact, and they should be excluded." (Mot. at 2.) The argument is nonsensical. Finnerty's Report contains both his extensive credentials (including decades of experience regarding the sale of companies) and the extensive list of evidence he reviewed in this case. (*See* Appendix B to Ex. A.) As such, he is *precisely* in a superior position to opine on what Overwell may have been willing to bid for the Neurensic assets.

Moreover, the conclusion to which Trading Technologies ultimately ████████



████████████ As such, this *Daubert* motion represents yet another attempt by Trading Technologies to contradict that undisputed, albeit inconvenient, fact. It should be rejected.

## CONCLUSION

WHEREFORE, Plaintiff Overwell Harvest Limited respectfully requests that this Court deny Trading Technologies' *Daubert* motion to exclude the testimony of John Finnerty and for any other relief the Court deems just and equitable under the circumstances.

Dated: September 2, 2022                    By:     /s/ William C. O'Hara           
<br>                                                          John J. Scharkey
<br>                                                          Robert D. Sweeney
<br>                                                          Ana R. Bugan
<br>                                                          William C. O'Hara
<br>                                                          SWEENEY, SCHARKEY & BLANCHARD LLC
<br>                                                          230 West Monroe Street
<br>                                                          Suite 1500
<br>                                                          Chicago, Illinois 60606
<br>                                                          Tel. (312) 384-0500

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on the date shown below he caused the foregoing document to be electronically filed with the Clerk of the U.S. District Court for the Northern District of Illinois, which will send a notification and a copy of the document to all counsel of record.

Dated: September 2, 2022          /s/ William O'Hara
                                  _____