IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OVERWELL HARVEST LIMITED, a British Virgin Islands company, individually and derivatively on behalf of Neurensic, Inc., <br><br> Plaintiff, <br><br> v. <br><br> DAVID WIDERHORN, PAUL GIEDRAITIS, and TRADING TECHNOLOGIES INTERNATIONAL, INC., <br><br> Defendants. | Case No. 17-cv-06086 <br><br> Honorable Sara L. Ellis |

**TRADING TECHNOLOGIES' REPLY IN SUPPORT OF ITS
<u>DAUBERT</u> MOTION TO EXCLUDE THE TESTIMONY OF JOHN FINNERTY**

David J. Doyle
Dylan Smith
Kirk Watkins
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
ddoyle@freeborn.com
dsmith@freeborn.com
kwatkins@freeborn.com

*Counsel for Defendant
Trading Technologies International, Inc.*

## INTRODUCTION

▇

—Testimony of John D. Finnerty, Ph.D
(Finnerty Tr. at 213:21-24 (emphasis added))

In its opening brief, Trading Technologies showed that OHL's valuation expert ▇ ▇ ▇ (Mot. at 7 (emphasis in original).) This violates a core tenet of valuation work that OHL fully embraces—*i.e.*, ▇ ▇ (Resp. at 10.) Hoping the Court will forgive this transgression, OHL argues: (1) that the premise of Trading Technologies' motion is "false"; and (2) even if it isn't, the Court should allow Finnerty's analysis to be presented to the jury because its shortcomings can be explored on cross-examination. (*Id.* at 10, 12.) OHL is wrong on both counts.

First, there is nothing "false" about the premise underlying Trading Technologies' motion. ▇ ▇

On this point, Finnerty's testimony is conclusive:

▇

▇

(Finnerty Tr. at 231:17-232:4, Mot. Ex. 2 (emphasis added).)

1

OHL glosses over the significance of Finnerty's ▮▮▮ arguing that he did not adopt Trading Technologies' revenue figures wholesale, but this misses the point. ▮▮▮ ▮ Not wanting to be criticized for ▮▮▮ (Finnerty Tr. at 233:20-25), ▮▮▮ (*Id.* at 235:2-5.)

Nowhere in its Response does OHL deny (or even acknowledge) ▮▮▮. Nowhere in its Response does OHL deny (or even acknowledge), ▮▮▮ And nowhere in its Response does OHL deny (or even acknowledge) ▮▮▮.

Despite OHL's urgings, the Court cannot simply brush this error under the rug without abrogating its role as the gatekeeper of expert testimony. Indeed, if it were appropriate to allow errors of this nature to be addressed on cross-examination, then the courts in cases like *In re Blair* and *In re Emerald Casino* committed reversible error. This is not a simple quibble with an input

2

to Finnerty's analysis. It is a challenge to his entire methodology that renders his analysis inherently unreliable in a situation where OHL has the burden of proving that Finnerty's opinions are based on reliable data, principles, and methods.

Finally, OHL offers no legal authority or sound reasoning to support its position that Finnerty should be allowed to opine ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The fact that Finnerty reviewed an "extensive list of evidence … in this case" (Resp. at 14), does not mean that he is better equipped than lay jurors to evaluate these issues, which, to they extent they are even relevant, fall outside his area of expertise as a valuation professional.

## ARGUMENT

### I. Trading Technologies' *Daubert* Motion Is Not Based on a "False" Premise

Trading Technologies' motion raises two straightforward issues: (1) did Finnerty violate established valuation practice by relying on information that was not known or knowable as of the Valuation Date; and (2) if so, should his valuation opinions be excluded as a result? As explained below, the answer to both of these questions is "yes."

On the first question, OHL claims Trading Technologies' argument that Finnerty employed hindsight is "squarely false" and based on a "false description" of his opinions. (Resp. at 1.) According to OHL, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3



(Finnerty Tr. at 215:2-10.)[1]

(Finnerty Tr. at 219:18-220:3.)

---

[1] *See also* Finnerty Tr. at 213:21-24



(Finnerty Tr. at 268:6-17.)

OHL defends Finnerty's analysis by noting                          . (*See* Resp. at 7 (

---

[2] 

(Finnerty Tr. at 219:18-220:3.)

[3] 

6

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(*See* Rpt. at 30-31, ¶ 57.)

OHL claims, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(Resp. at 9.) Thus, OHL posits, ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.*)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Rpt. at 29, ¶ 55.) ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

As Trading Technologies' expert, Timothy Cummins, ▓▓▓▓

▓▓▓▓. (Rebuttal Rpt. at 24, ¶ 66, Exhibit B, Mot. Ex. 4.) ▓▓▓▓

▓▓▓▓. (Rpt. at 32-33, ¶ 62, Tables 8 & 9.) ▓▓▓▓

In short, there is nothing "false" about the premise underlying Trading Technologies' *Daubert* motion. Contrary to recognized valuation practice, ▓▓▓▓

## II. Finnerty's Violation of the Known-or-Knowable Principle Requires Exclusion of His Valuation Opinions

OHL argues that Trading Technologies follows an "all-too-typical trend" by raising issues that purportedly go to the weight rather than the admissibility of an expert's opinions. (Resp. at 1.)

8

If there is any "trend" to be resisted, however, it is the trend OHL advocates. The view that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility" is "an incorrect application of Rules 702 and 104(a)."[4] As the Seventh Circuit repeatedly has instructed, "the party seeking to introduce the expert witness testimony bears the burden of demonstrating that the expert witness satisfies the *Daubert* standard by a preponderance of the evidence." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017) (internal quotations, citation, and alterations omitted); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (same); *accord Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 958 (N.D. Ill. 2015) (Ellis, J.).

In support of its weight-not-admissibility theme, OHL cites selected opinions for the propositions that even "'shaky' expert testimony may be admissible," and that, as a "general rule," challenges to an expert's "bases and sources" go merely to weight. (Resp. at 7, 11.) But this Court has instructed that those truisms must be qualified in important ways ignored by OHL:

> To be sure, an expert's failure to consider certain evidence generally is an issue that goes to the weight of the expert's opinion, not its admissibility. But this presumes that the expert has relied upon "sufficient facts or data" to support his testimony and that this "testimony is the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). Although "shaky" expert testimony may be admissible, subject to attack on cross-examination, unreliable testimony is the very testimony that a district court, acting in its gatekeeping role, is charged with excluding.

---

[4] *See* Committee on Rules of Practice and Procedure, June 7, 2022 Agenda, at 892, Proposed Amendments to the Federal Rules of Evidence, Rule 702, Committee Note, available at https://www.uscourts.gov/rules-policies/archives/agenda-books/committee-rules-practice-and-procedure-june-2022 (last visited Sept. 19, 2022). Pending amendments to Rule 702, unanimously adopted by the Committee on June 7, 2022, are intended to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." *Id.*; *see also* Summary of Report of the Judicial Conference Committee on Rules of Practice and Procedure, September 2022, at 23-24, available at https://www.uscourts.gov/rules-policies/archives/committee-reports/reports-judicial-conference-september-2022 (last visited Sept. 19, 2022).

*Chen v. Mnuchin*, 2020 WL 5819869, at *4 (N.D. Ill. Sept. 30, 2020) (Ellis, J.) (barring expert testimony) (internal quotations, citations, and alterations omitted), *superseded by Chen v. Yellen*, 2021 WL 4192078 (N.D. Ill. Sept. 15, 2021) (Johnston, J.) (barring same testimony).[5]

This guidance applies with full force to Finnerty's valuation opinions. OHL suggests that those opinions should not be stricken because Finnerty ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Resp. at 11.) But, as Trading Technologies noted in its opening brief (Mot. at 3), *Daubert* requires courts "to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Goldberg v. 401 N. Wabash Venture, LLC*, 2013 WL 212912, at *2 (N.D. Ill. Jan. 18, 2013) (citations omitted). Here, by his own admission, Finnerty ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In the cases OHL cites to support its weight-not-admissibility argument, the issue presented was whether material that was of the *proper type* to be considered under an expert's methodology was sufficiently reliable or had been vetted properly. (*See* Resp. at 11-12.) For example, in *Smart Marketing Group v. Publications International*, this Court overruled the defendant's objection to an expert's lost profits opinions because the expert's projected contract renewal rate "cannot be said to be inherently unreliable or data that an expert … would not rely on in performing a lost profits calculation." 2014 WL 624933, at *4 (N.D. Ill. Feb. 18, 2014). Here, in contrast, the August

---

[5] The Court vacated the initial, September 30, 2020 *Daubert* ruling because it was entered one day after the case had been reassigned from Judge Ellis to Judge Johnston. (*See* 9/15/21 Minute Entry, *Chen v. Yellen*, Case No. 14-50164 (N.D. Ill.), ECF No. 253.)

10

2020 projections Finnerty used to value Neurensic's assets plainly were *not* the type of data on which valuation experts should rely.

Again, OHL attempts to trivialize this decision by arguing ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Rpt. at 30-31, ¶ 57.)

OHL is right, of course, that Trading Technologies could attempt to address Finnerty's deviation from established valuation practice through cross-examination at trial. But Rule 702 demands that expert opinions be based on "sufficient facts or data" and be "the product of reliable principles and methods," and that the expert "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). OHL has failed to meet its burden of establishing these things by a preponderance of the evidence. Accordingly, the Court should exclude Finnerty's valuation opinions.

**III.    Finnerty's Other Opinions Should Be Excluded as Well**

OHL devotes less than a page to defending Finnerty's opinions about ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Resp. at 13-14.) OHL's defense of these opinions cites no legal authority

11

and ignores the fact that the first opinion is irrelevant, and the second opinion improperly goes to OHL's state of mind.

According to OHL, Finnerty's opinion 

Resp. at 13.) But the only support Finnerty provides for this opinion in his report are

(Rpt. at 40, ¶ 74 n.106).

. (*See* Finnerty Tr. at 55:17-59:4.)

More importantly, this Court has stated that OHL's aiding and abetting claim concerns whether Widerhorn and Giedraitis' violated their duty to act in good faith through the alleged misuse of confidential information, *not* whether they "mismanage[ed] the sale process in violation of their *Revlon* duties." (3/23/22 Opinion and Order, ECF No. 246 at 8.) If OHL were trying its direct claim against the individual defendants, then it might be proper for the Court to to allow OHL to introduce evidence second-guessing the sales process. But Trading Technologies' alleged wrongdoing did not begin until mid-September 2017 when Jay Biondo began working for Trading Technologies. By that time, Neurensic was insolvent and the sales process was nearly complete, as Widerhorn and Giedraitis had received rejections from some two dozen potential acquirors, and—despite Widerhorn's repeated urgings to shareholders to propose an alternative to the Trading Technologies deal—no other options appeared available. OHL offers no explanation as to

12

why Widerhorn and Giedratis' decision to eschew an auction in favor of other sales methods should be laid at Trading Technologies' feet at trial.

OHL argues that Trading Technologies' argument for excluding Finnerty's opinions about the sales process is belied by the fact that Trading Technologies' own expert, Tim Cummins, ▇▇▇. (Resp. at 13.) But, of course, Cummins is a *rebuttal* expert. Trading Technologies is not arguing, as OHL suggests, that Cummins is "more qualified than Finnerty to opine on the sales process." (*Id.*) Rather, *neither* expert should be allowed to testify on this topic, as it is beyond the scope of the trial. And, even if it were not, the opinions will not assist the trier of fact.

Lastly, the Court should not allow Finnerty to testify that  (Rpt. at 5, ¶ 14(d).) OHL labels Trading Technologies' argument that Finnerty is in no better position than a jury to decide how much OHL might have bid "nonsensical" because Finnerty has "extensive credentials" and reviewed an "extensive list of evidence" in this case. (Resp. at 14.) In fact, OHL ▇▇▇ (ECF No. 99 at 21, ¶ 68).

This is improper. Finnerty should not be allowed to opine on the state of mind of OHL and what it might have been willing to bid. There will be fact witnesses at trial who can speak to this issue. Indeed, in a case OHL cites, this Court held that expert testimony on a party's state of mind

13

is improper. *SEC v. Ustian*, 2020 WL 416289, at *12 (N.D. Ill. Jan. 267, 2020) (Ellis, J.) (holding that expert could not "opine on … Navistar's state of mind").

OHL's only argument for allowing Finnerty to testify at trial about what OHL "could have bid" is its view that this opinion is consistent with facts the parties presented to the Court at the summary judgment stage. (Resp. at 14.) But that is irrelevant. The test for the admission of expert testimony is not whether a party believes it is consistent with the evidentiary record. The test is whether it is based on reliable data and methods and will assist the trier of fact. Here, Finnerty uses *no* specialized knowledge and *no* scientific method of any kind to inform his opinion on what OHL "could have bid." Like the rest of his opinions, this opinion should be excluded.

## CONCLUSION

For the foregoing reasons, Defendant Trading Technologies International, Inc. respectfully requests that the Court exclude all of Dr. Finnerty's opinions and bar him from testifying at the trial of this matter.

Dated: September 20, 2022

Respectfully submitted,

**TRADING TECHNOLOGIES INTERNATIONAL, INC.**

By: */s/ David J. Doyle*
     One of its attorneys

David J. Doyle
Dylan Smith
Kirk Watkins
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000
ddoyle@freeborn.com
dsmith@freeborn.com
kwatkins@freeborn.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 20, 2022, he caused a true and correct copy of the foregoing document to be filed via the Court's Electronic Case Filing (ECF) system and thereby served on counsel of record.

*/s/* David J. Doyle
*Counsel for Defendant Trading Technologies International, Inc.*