UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OVERWELL HARVEST LIMITED, ) <br> A British Virgin Islands company, ) <br> Individually and derivatively on behalf of ) <br> Neurensic, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID WIDERHORN, PAUL GIEDRAITIS, ) <br> and TRADING TECHNOLOGIES ) <br> INTERNATIONAL, INC., ) <br> ) <br> Defendants. ) | No. 17 C 6086 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

In preparation for trial, Trading Technologies International, Inc. ("Trading Technologies") filed a motion to exclude Overwell Harvest Limited's ("Overwell") proposed expert testimony pursuant to Federal Rule of Evidence 702. Specifically, Trading Technologies moves to exclude Dr. John Finnerty's opinions relating to (1) the value of Neurensic's assets; (2) actions that David Widerhorn and Paul Giedraitis (the "Directors") should have taken with respect to the sale of those assets—specifically, that the Directors' failure to conduct a robust auction process resulted in a lower sales price and that the Directors should have allowed Overwell to submit an additional bid; and (3) Overwell's potential bid. The Court assumes the reader's familiarity with the background facts of this case, which the Court's summary judgment and motion for reconsideration opinions more fully recount. *See* Docs. 233, 246. After considering the parties' arguments, the Court denies Trading Technologies' motion in part, defers ruling in part, and grants in part. Finnerty may present his valuation opinion at trial because it is sufficiently reliable and the arguments raised in favor of exclusion more

appropriately go to the weight of the testimony rather than its admissibility. In line with its ruling on Trading Technologies' motion *in limine* no. 1, the Court defers ruling on whether Finnerty may testify about actions that the Directors should have taken in connection with the sale of Neurensic's assets until after the pretrial conference. Finally, Finnerty may not testify about the amount Overwell might have bid on Neurensic's assets because it would amount to impermissible state of mind testimony and would not assist the finder of fact.

## LEGAL STANDARD

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert evidence. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Together, Rule 702 and *Daubert* provide that an expert's testimony is admissible if: (1) the expert is qualified, (2) the expert's methodology is reliable, and (3) the testimony is relevant, *i.e.*, it will help the trier of fact understand the evidence or determine a fact in issue. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017); *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The Rule 702 inquiry is 'a flexible one,'" and the Seventh Circuit grants "the district court wide latitude in performing its gate-keeping function." *Bielskis*, 663 F.3d at 894 (quoting *Daubert*, 509 U.S. at 594). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination" or the presentation of contrary evidence. *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citation omitted); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Overwell bears the burden of

establishing the admissibility of Finnerty's testimony by a preponderance of the evidence. *Gopalratnam*, 877 F.3d at 782.

## ANALYSIS[1]

Overwell intends to present the testimony of Dr. John Finnerty, an Academic Affiliate at AlixPartners, LLP with experience in business valuation and damages calculations. Overwell offers Finnerty's opinions to demonstrate the fair market value of Neurensic's assets as of the sale date, that the Directors' failure to conduct a robust auction process resulted in a lower sales price, that the Directors should have allowed Overwell to submit an additional bid, and the reasonableness of Overwell's potential bid. Trading Technologies does not challenge the admissibility of Finnerty's opinions based on his qualifications, and so the Court does not address that step of the Rule 702 analysis. *See United States v. Jett*, 908 F.3d 252, 266 (7th Cir. 2018) ("District judges are not required to undertake each step of the Rule 702 analysis when no party specifically requests it."). Rather, Trading Technologies challenges the reliability of Finnerty's valuation opinion and relevance of his other opinions, which the Court addresses in turn.

## I. Reliability of Finnerty's Valuation Opinion

Rule 702 sets forth three requirements for reliability: (1) the expert's testimony must be "based on sufficient facts or data," (2) the expert's testimony must be "the product of reliable principles and methods," and (3) the expert must have "reliably applied the principles and

---

[1] The parties filed their briefs and accompanying exhibits under seal, also providing redacted versions. When the Court refers to a sealed document, it attempts to do so without revealing any information that could reasonably be deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning. *See City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014) ("[D]ocuments that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality." (citation omitted)); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

3

methods to the facts of the case." Fed. R. Evid. 702(b)–(d); *Smith v. Ill. Dep't of Transp.*, No. 15 C 2061, 2018 WL 3753439, at *13 (N.D. Ill. Aug. 8, 2018), *aff'd*, 936 F.3d 554 (7th Cir. 2019). Here, Finnerty uses a discounted cash flow ("DCF") analysis to assess the fair market value of Neurensic's assets at the time of the sale. Trading Technologies does not contest the propriety of a DCF analysis generally. Instead, it argues that Finnerty's opinion is unreliable because he selectively relies on unknown or unknowable information—specifically, growth projections created by Trading Technologies three years after the asset sale—in order to conduct that analysis.

Trading Technologies correctly posits that the Seventh Circuit cautions experts against using unknown or unknowable information when calculating the fair market value of an asset. *See First Nat'l Bank of Kenosha v. United States*, 763 F.2d 891, 893–94 (7th Cir. 1985) ("[A] rule has developed that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation[.]"); *In re Emerald Casino, Inc.*, 530 B.R. 44, 222 (N.D. Ill. 2014) ("The Seventh Circuit has also cautioned that hindsight bias is to be fought rather than embraced when valuing a company." (citation omitted) (internal quotation marks omitted)), *aff'd in part, vacated in part sub nom. In re: Emerald Casino, Inc.*, 867 F.3d 743 (7th Cir. 2017). But here, it is not clear that Finnerty did in fact rely on unknowable growth rate information in his DCF analysis. Although the record contains evidence that Finnerty used Trading Technologies' growth rate projections, *see* Doc. 258-2 at 231:17–232:4 ("I used [Trading Technologies' 2020 projections] as the basis . . . for the growth rates I selected for 2020 to 2021"), which "were not known or knowable as of the Valuation Date," Doc. 258-1 ¶ 57, it also suggests that Finnerty felt comfortable with his selected growth rates based on his "experience in valuating technologies companies," *see* Doc. 258-2 at 226:24–

4

227:13; *see also id.* ("I didn't use the revenue projections. I used the growth rates, and I think those growth rates . . . would be reasonable given the development . . . of any company in a similar business. . . . I took the growth rates that were, in fact, implied in a future period as reflecting characteristics of that business.").

Moreover, throughout his deposition and in his export report, Finnerty explains that he selected the particular growth rates for use in his DCF analysis because he thought they were reasonable. *See, e.g.*, Doc. 258-2 at 226:24–227:13, 232:20 –233:10; Doc. 258-1 ¶ 57. It may be the case that Finnerty's assumptions were mistaken. But the "assumptions used in applying a methodology are tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology—the framework—of the expert's analysis." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2013). Put another way, the "*Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy," *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012), including the "soundness of the factual underpinnings" of the expert opinion, *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). If Trading Technologies takes issue with the reasonableness of Finnerty's growth rate projections, it may identify those issues on cross examination or through its own expert's testimony. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The cases that Trading Technologies cite do not require a different conclusion. Here, Finnerty accounted for the "many uncertainties associated with acquiring assets from a company under financial distress" by applying a discount. *See* Doc. 258-1 ¶ 35; *cf. In re Emerald Casino,*

*Inc.*, 530 B.R. at 221 (excluding expert testimony where the expert admitted that his analysis did not account for certain risks). Moreover, Finnerty did not base his opinion on future events that were unknowable at the time of the asset sale. *Cf. First Nat'l Bank of Kenosha*, 763 F.2d at 894 (explaining that "[t]he discovery of oil [on a decedent's estate] is the kind of subsequent event that the rule . . . makes inadmissible, for it is beyond the contemplation of the parties on the relevant valuation date" (citation omitted) (internal quotation marks omitted)); *In re Blair*, 588 B.R. 605, 618 (Bankr. D. Colo. 2018) (expert relied on a later judicial decision to identify debtor's liabilities where, as of the valuation date, any liabilities were merely contingent). Instead, Finnerty permissibly based his growth rate on projections he thought reasonable based on his experience evaluating similar companies. *See Blue Book Servs., Inc. v. Amerihua Produce, Inc.*, 337 F. Supp. 3d 802, 817 (N.D. Ill. 2018) ("[T]here is no simple (or even complex) equation that applies to all scenarios for valuing a company. At some point, expertise has to be applied, and that expertise is based on training and experience rather than invocation of a formula.").

Trading Technologies also argues that by using its after-the-fact growth rate projections while simultaneously ignoring the Neurensic assets' actual performance, Finnerty improperly cherry picked the information on which he relied. Even if Finnerty could permissibly consider the assets' actual performance—which is unlikely given that the actual performance was unknowable at the time of the asset sale—an expert's failure to consider certain evidence is generally an issue that goes to the weight of the expert's opinion, not its admissibility. *See Loeffel Steel Prods., Inc. v. Delta Brand*s*, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005); *cf. Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) (explaining that "[w]hile failing to account for supposedly contradictory information often is a

6

question going to weight of the evidence rather than its admissibility . . . , in this case, [the expert's] cherry picking [among information available at the relevant time] highlights the analytical gap between his methodology and conclusions, especially when viewed in light of the many other deficiencies in his inquiry"). Therefore, Trading Technologies' selectivity argument is better posed to a trier of fact, and the Court will not preclude Finnerty's valuation testimony on that basis. Trading Technologies may challenge the reasonableness of Finnerty's selected growth rates through cross examination and its own expert's opinion.

## II.     Assistance to the Trier of Fact

Trading Technologies also seeks to exclude Finnerty's opinions regarding what the Directors "should have" done to sell Neurensic's assets and what Overwell "could have bid" on those assets, arguing that those opinions would not help a trier of fact understand evidence or determine a fact in issue in this case. *See* Doc. 258 at 12–15. Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue,'" which "goes primarily to relevance." *Daubert*, 509 U.S. at 591 (citation omitted); *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). "Expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Aponte v. City of Chicago*, No. 09-CV-8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) (citing *Taylor v. Illinois Cent. R.R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993)); *see also Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) ("An expert must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury."); *Taylor*, 8 F.3d at 585–86 (explaining that it was proper for the court to exclude expert testimony because "any lay juror could understand th[e] issue without the assistance of expert

7

testimony"). Under the relevancy determination, the Court is "limited to determining whether expert testimony is pertinent to an issue in the case." *Stuhlmacher*, 774 F.3d at 409.

### A. The Directors' Pre-Sale Actions

Overwell intends to admit Finnerty's opinion that (1) the Directors' failure to conduct a robust auction process resulted in a lower sales price than could have been achieved had they solicited, or at least permitted, competitive bidding, and (2) the Directors should have permitted Overwell to submit an additional bid. Trading Technologies argues that these opinions should be excluded because the trier of fact will be able to draw its own conclusions on these topics without the assistance of expert testimony. Further, Trading Technologies asserts that this case is not about the processes the Directors used to sell Neurensic's assets, and therefore Finnerty's testimony regarding those processes is not within the scope of this trial.

The Court defers ruling on the admissibility of this testimony until after the pretrial conference, where the parties will have an opportunity to present the Court with arguments regarding the proper scope of this trial. As discussed more completely in the Court's ruling on Trading Technologies' motion *in limine* no. 1, the Court did not limit the potential breaches of fiduciary duty to only those related to the misuse of confidential information. However, it is not clear that all potential breaches of fiduciary duty by the Directors could give rise to Trading Technologies' aiding and abetting liability. If the Directors' alleged mismanagement of the sales process could not serve as the underlying basis for Trading Technologies' liability, then whether the Directors should have used a different process is not relevant to liability. If Overwell can demonstrate that this information is relevant for another purpose—for example, assessing damages—it may raise those arguments at the pretrial conference.

The Court notes that should it find that the trial's scope may include the Directors' alleged mismanagement of the sale process, Finnerty may opine on the Directors' alleged sale process failures. Based on his education, training, and experience, Finnerty can testify regarding his opinion that an auction process or an additional bid from Overwell would have increased the sales price for Neurensic's assets. *See* Doc. 258-1 ¶¶ 14, 74. Trading Technologies is free to dispute Finnerty's testimony—for example, by raising his inability to identify an instance when a company like Neurensic was sold through an auction process, *see* Doc. 284 at 12—on cross-examination. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 1836443, at *13 (N.D. Ill. May 8, 2017) ("If the credibility or accuracy of an expert opinion is in question, the proper remedy is not exclusion of the testimony, but rather testing the opinion before the jury using the traditional tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" (citing *Daubert*, 509 U.S. at 596)). However, Finnerty may not testify regarding whether the Directors *prevented* Overwell from submitting another bid because that is a question of fact that does not require expert assistance. *See Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 212912, at *7 (N.D. Ill. Jan. 18, 2013) (excluding expert testimony where the expert did "not have any expertise to support [his] opinions and the[] opinions [would] not assist the jury").

B. **Overwell's Bid**

Overwell also intends to elicit Finnerty's opinion regarding the amount Overwell could have bid on Neurensic's asserts. In support of admission, Overwell argues that Finnerty's expertise places him in a superior position to opine on this matter and that his conclusions are consistent with the undisputed facts of the case. Trading Technologies argues that Finnerty's

9

opinion amounts to a hypothesis that is not grounded in either scientific method or industry knowledge, that it would not assist the trier of fact, and that Overwell itself is best positioned to testify regarding what it could have bid.

Overwell has not met its burden to establish the admissibility of Finnerty's testimony on this point.  First, the Court agrees with Trading Technologies that the consistency of Finnerty's conclusions with the facts of the case is irrelevant to the Court's assessment of admissibility.  Second, although what Overwell might have bid is relevant to the question of damages, Finnerty's testimony on this issue would be improper.  Finnerty cannot testify regarding Overwell's willingness to bid, as it would essentially amount to impermissible state of mind testimony.  *See Ploss v. Kraft Foods Grp., Inc.*, No. 15-CV-02937, 2022 WL 16540179, at *6 (N.D. Ill. Oct. 28, 2022) ("Experts' 'assertions about another person's intent [frequently] are neither helpful nor admissible under Rule 702.'" (alteration in original) (citing *United States v. Schultz*, 2016 WL 7409911, at *3 (N.D. Ill. Dec. 22, 2016)).  Accordingly, although Finnerty may testify that a bid within a "range of $1.398 million to $2.095 million for the Neurensic Assets" would or would not be reasonable based on certain factors, *see* Doc. 258-1 ¶ 14, he may not testify that *Overwell* was willing to bid within that range.  Overwell's own fact witnesses may testify to the amount it was prepared to bid and the trier of fact may evaluate that testimony based on its assessment of the witnesses' credibility and Finnerty's testimony about a reasonable bid more generally.

## CONCLUSION

For the foregoing reasons, the Court denies in part, defers ruling in part, and grants in part Trading Technologies' motion to exclude expert testimony [258].  The Court denies Trading Technologies' request to exclude Finnerty's valuation opinion.  The Court defers ruling on

Trading Technologies' request to exclude Finnerty's opinion regarding actions the Directors should have taken in connection with Neurensic's asset sale. The Court grants Trading Technologies' request to exclude Finnerty's opinion as to what Overwell would reasonably have bid on Neurensic's assets.

Dated: December 2, 2022

_____
SARA L. ELLIS
United States District Judge